UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                      :
STANLEY HARDEE,                                    :
                                                      :      10 Civ. 7743 (PAE)
                            Plaintiff,                :
                                                       :      OPINION & ORDER
                -v-                              :
                                                       :
CITY OF NEW YORK, et al.,               :
                                                       :
                            Defendants.            :
                                                       :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Stanley Hardee ("Hardee"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against the City of New York (the "City") and four individual defendants: Sergeant Christopher Siani ("Siani"), Sergeant Stephen Loud ("Loud"), Police Officer Kieran Kailer ("Kailer"), and retired Detective Joseph Cosaluzzo ("Cosaluzzo") of the New York City Police Department ("NYPD") (collectively, the "individual defendants"). Hardee asserts claims of: (1) excessive force, in violation of the Fourth Amendment to the U.S. Constitution, against the individual defendants; (2) municipal liability for the claim of excessive force against the City; and (3) assault and battery under New York State law against the City and the individual defendants. These claims stem from a July 31, 2010 traffic stop that resulted in Hardee's arrest. Hardee alleges that, during that stop, Siani, Loud, and Kailer "ransacked" his vehicle and physically assaulted him, causing fractures to his teeth and lacerations to his face and arms. Hardee seeks $1 million from the City, and $500,000 from each individual defendant, for a total of $3 million in damages.

Defendants now move for summary judgment as to: (1) all claims against Cosaluzzo and the City; and (2) the assault and battery claims against the individual defendants. For the reasons that follow, the motion is granted in part and denied in part.

I. Background[1]

A. Facts

Shortly after 1 a.m. on July 31, 2010, Hardee was driving his car south on Lexington Avenue near 116th Street in Manhattan, New York. Def. 56.1 ¶ 1; *see also* Nam Decl. Ex. B ("Hardee Dep.") at 21. Alice Simmons ("Simmons"), an associate of Hardee's, was in the front passenger seat. Def. 56.1 ¶ 2; *see also* Hardee Dep. at 10, 22.

Three plainclothes officers of the Manhattan North Anti-Crime Unit of the NYPD—Siani, Loud, and Kailer—were on patrol and riding in an unmarked vehicle. Def. 56.1 ¶ 3. Kailer was driving, Loud was in the front passenger seat, and Siani was in the backseat behind Kailer. Nam Decl. Ex. C at 2. At approximately 1:22 a.m., Siani and Loud saw Hardee's car driving down Lexington Avenue at a speed that Loud estimated was 20 to 30 miles per hour above the speed limit. Def. 56.1 ¶¶ 4–5. Siani and Loud alerted Kailer to the speeding car;

---

[1] Because the motion for partial summary judgment is unopposed, the Court's account of the underlying facts of this case is drawn primarily from defendants' submissions in support of this motion, including: Defendants' Rule 56.1 Statement ("Def. 56.1 Statement") (Dkt. 41), and the Declaration of Rosemari Y. Nam in Support of Motion for Summary Judgment ("Nam Decl.") (Dkt. 42), and the exhibits attached thereto. Citations to defendants' 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and are not contradicted by admissible evidence, *e.g.*, Hardee's deposition testimony, the Court has found such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

2

Kailer activated his lights and siren and followed Hardee's car south on Lexington Avenue. Nam Decl. Ex. C at 2.  According to Siani and Loud, Hardee's car was "changing lanes and weaving in and out of traffic without signaling and appeared to be in a big hurry." *Id.* at 2–3. The officers pulled Hardee over on Lexington Avenue between 116th and 117th Streets.  Def. 56.1 ¶¶ 6–7; *see also* Hardee Dep. at 21.

Kailer and Siani approached the driver's side of Hardee's car; Loud approached the passenger's side.  Def. 56.1 ¶ 8.  Siani testified that Hardee was "wide-eyed," appeared to be nervous, moved around a lot, and looked at Simmons and the backseat "two or four times."  Nam Decl. Ex. C at 3.  According to Siani, Hardee was acting very animated to the point at which he thought Hardee might be on drugs because he was so "hyper."  *Id.*  Kailer told Hardee to stop moving around.  *Id.*  When Hardee continued to move and look around, Kailer asked him to step out of his car.  Def. 56.1 ¶¶ 12–13; *see also* Hardee Dep. 22:7–8; Nam Decl. Ex. C at 3.  Kailer frisked Hardee and asked him if he had any weapons.  Def. 56.1 ¶¶ 13–14; *see also* Hardee Dep. 21:18–19, 22:9–13; Nam Decl. Ex. C at 4.  Kailer then directed Hardee to place his hands in his front pockets and to stand by the rear of the car.  Def. 56.1 ¶ 14.

While Hardee was waiting at the back of the car, he continued to look over his shoulders, at Loud, and into the back seat.  Def. 56.1 ¶¶ 15–16.  Siani testified that Hardee was acting "way too nervous," and that, based on his behavior, Siani believed Hardee was either going to flee or fight the officers.  *Id.* ¶ 18; Nam Decl. Ex. C at 5.  Kailer told Hardee to stop looking back and warned him that he would be handcuffed if he did not comply.  Def. 56.1 ¶ 17.  Hardee immediately looked back into the car.  *Id.* ¶ 18.  Siani then attempted to handcuff Hardee.  *Id.*

3

¶ 20.  After Siani placed one of the handcuffs on Hardee's right wrist, Hardee began to resist arrest.[2]  *Id.* ¶ 21.

Meanwhile, Loud, who was standing near the passenger side of Hardee's vehicle, asked Simmons, the passenger, to step out of the car.  *Id.* ¶ 22.  When she did so, Loud leaned through the open window and looked at the backseat where Hardee's attention had earlier appeared to be directed.  *Id.* ¶ 23.  In the backseat, Loud saw a "medium-sized, maroon plastic shopping bag with handles."  *Id.* ¶ 24.  Loud pulled the plastic bag toward him and saw that a smaller black bag was inside the shopping bag, and that the handle of a semiautomatic firearm was sticking out of that bag.  *Id.* ¶ 25. Loud yelled "Gun" and ran over to assist Kailer and Siani, who were, at that time, struggling to subdue Hardee.  *Id.* ¶¶ 26–27.  Loud "started to hit [Hardee] to attempt to get him down on the ground."  Nam Decl. Ex. C at 6.  While Kailer, Siani, and Loud were struggling with Hardee, a uniformed officer who was on foot patrol came to their assistance and struck Hardee with his baton.  Def. 56.1 ¶ 29.  Hardee testified that two officers used their batons, and that they hit him in the head, legs, shoulders, arms, and mouth.  *Id.* ¶¶ 31–32; *see also* Hardee Dep. 27–28.  After "approximately forty-five seconds" of struggle, Kailer, Siani, and Loud were able to handcuff Hardee and place him under arrest.  Nam Decl. Ex. C at 6; Def. 56.1 ¶ 30.  The officers searched the car and seized a "defaced and loaded Black Ruger-Model P89 9mm pistol."  Def. 56.1 ¶ 33.

On the night of Hardee's arrest, Detective Cosaluzzo was assigned to the NYPD's Manhattan South Detective Borough NightWatch, which is located at 230 West 13th Street,

---

[2] This portion of the interaction is not entirely undisputed.  According to Hardee, while he was standing at the back of the car, he told the officers they were violating his rights, *see* Hardee Dep. 21–22; in response, he contends, the officers attempted to handcuff him and one of them "swung on" him, *id.* at 27.

4

Manhattan, New York.  Def. 56.1 ¶ 35; Nam Decl. Ex. F ("Cosaluzzo Decl.") ¶ 4.  NightWatch "consists of detectives who investigate any incidents occurring between the hours of 1 a.m. and 8 a.m."  Cosaluzzo Decl. ¶ 5.  Cosaluzzo was assigned to investigate the incident involving Hardee.  *Id.* ¶ 9.  Cosaluzzo met with and interviewed Hardee at the 25th Precinct, Def. 56.1 ¶ 36, where Hardee was initially detained, *id.* ¶ 35; Hardee Dep. 40.  Cosaluzzo prepared, as the investigating detective, an NYPD Complaint Follow-Up Informational System Report ("DD5s") regarding Hardee's arrest.  Def. 56.1 ¶ 37; Cosaluzzo Decl. ¶¶ 12–13.

Hardee did not file a New York State notice of claim with respect to the events that allegedly occurred at the time of his arrest.  Def. 56.1 ¶ 40; *see also* Hardee Dep. 18.

### B.      Procedural History

On October 6, 2010, Hardee filed his *pro se* Complaint in this case.  Dkt. 2 ("Compl."). Hardee listed Cosaluzzo, Kailer, Loud, and Siani as defendants in this lawsuit based on the police report he received, because he could not recall the names of the officers involved in his arrest.  Def. 56.1 ¶ 38.  The Complaint seeks compensatory damages totaling $3 million:  $1 million from the City for the alleged constitutional violation, *i.e.*, the use of excessive force; and $500,000 each from Siani, Loud, Kailer, and Cosaluzzo for his alleged "physical, mental, and emotional duress and anguish."  Compl. at 4.

On October 15, 2010, Hardee's case was assigned to the Hon. Richard J. Holwell.  Dkt. 4.  On January 25, 2011, Judge Holwell granted defendants' motion to stay this action pending the disposition of Hardee's criminal case in New York State Supreme Court.  *See* Dkt. 5.  On October 20, 2011, this case was reassigned to this Court.  Dkt. 10.

On October 3, 2012, Hardee pled guilty to one count of Criminal Possession of a Weapon in New York Supreme Court.  Def. 56.1 ¶ 39.  On January 22, 2013, he was sentenced to a term

of 16 years to life imprisonment. Dkt. 14; *see also* Def. 56.1 ¶ 39. On February 1, 2013, the Court granted defendants' motion to lift the stay on this case and gave defendants 30 days to answer Hardee's Complaint. Dkt. 14.

On March 1, 2013, defendants filed an Answer, asserting 11 affirmative defenses. Dkt. 15. On March 15, 2013, the Court referred this case to Magistrate Judge James C. Francis for general pretrial supervision. Dkt. 17. On April 30, 2013, Judge Francis held a pretrial conference, with Hardee appearing by phone. Dkt. 19. That same day, Judge Francis issued an Order that set a five-month period of fact discovery, which was to end on September 30, 2013. Dkt. 21. On May 15, 2013, defendants mailed Hardee their first set of interrogatories and a request for production of documents. *See* Dkt. 27. On July 19, 2013, defendants received Hardee's partial response. *Id.*

By letter dated September 6, 2013, Hardee requested an extension of time to respond to defendants' objections to his first request for documents and interrogatories. Dkt. 22. Hardee asserted that he had received, on August 22, 2013, "general statements and objections from defendants, wherein they . . . outlined their reason for objecting to various requests plaintiff ha[d] made for interrogatories and documents." *Id.* He asserted that defendants' objections to his discovery requests restricted his ability to make a showing that "defendants have a propensity for violent encounters, and do in fact go out of their way to commit assaults upon minoritys [sic] they come into contact with in the daily course of their patrol of New York City." *Id.* He further stated his intent to "show that the documents in which [sic] were requested through his first set of requests for documents and interrogatories are not privileged, insofar that their materiality and relevance to the character and general demener [sic] of the defendants make them discoverable." *Id.* On September 12, 2013, Judge Francis denied Hardee's request for an extension of time and

informed Hardee that, if he wished to challenge defendants' objections, he should promptly file a motion to compel defendants to respond. *Id.*

On September 13, 2013, Judge Francis issued a Confidentiality Stipulation and Order, pursuant to Rule 26(c), directing Hardee not to use or disclose confidential materials produced by defendants for any purpose other than for the preparation or presentation of his case. Dkt. 23. That Order specified the following materials: "New York City Police Department ('NYPD') personnel and disciplinary related records, and records of investigations regarding the conduct of Members of the Service of the NYPD conducted by the NYPD, the Civilian Complaint Review Board, or other agency." *Id.*

On September 24, 2013, Judge Francis granted defendants' motion to compel Hardee to provide contact information for Simmons, a non-party witness named in his responses to defendants' interrogatories, and their request for a 30-day extension of the discovery deadline. Dkt. 26. On September 25, 2013, counsel for defendants deposed Hardee via video conference. *See* Dkt. 24. During the deposition, Hardee testified that "while he [did] not currently have Ms. Simmons' contact information, his family members were in the process of trying to locate her." Dkt. 29.

On September 27, 2013, Judge Francis granted defendants' motion to compel Hardee to provide a blanket New York Criminal Procedure Law ("CPL") § 160.50 unsealing release to enable defendants to access his complete arrest and prosecution records. Dkt. 28. That same day, defendants mailed Hardee a request for admissions. *See* Dkt. 31.

On October 22, 2013, Judge Francis granted defendants' renewed motion to compel Hardee to provide contact information for Simmons and a CPL § 160.50 unsealing release, and their request for a second 30-day extension of the discovery deadline. Dkt. 30.

7

On October 29, 2013, copies of the September 24 and 27, 2013 Orders were mailed to Hardee; however, on November 5, 2013, these mailings were returned as undeliverable.

On November 15, 2013, defendants renewed their request to compel Hardee to provide a CPL § 160.50 unsealing release, moved to compel Hardee to respond to their request for admissions, and requested an extension of the discovery deadline to January 15, 2014.  Dkt. 31.  On November 18, 2013, Judge Francis ordered Hardee to provide the requested release and granted the extension of the period for fact discovery.  Dkt. 32.  On November 18, 2013, a copy of this order was mailed to Hardee; on December 3, 2013, that mailing, too, was returned as undeliverable.

On December 17, 2013, defendants moved to dismiss this case with prejudice, pursuant to Rule 41(b), due to Hardee's "repeated failure to prosecute."  Dkt. 33.  On December 19, 2013, Judge Francis ordered Hardee to answer defendants' motion by December 31, 2013.  Dkt. 34.  On December 24, 2013, Hardee answered.  *See* Dkt. 35.  According to defendants, Hardee stated in the letter that he "refuse[s] to answer any questions pertaining to his criminal or medical history, which be believed to be irrelevant an[d] unnecessary," and requested "that the Court move for summary of judgment or default of judgment for lack of prosecution pursuant to (41-B)" because "defendants ha[ve] shown no interest in prosecuting" this case.[3]  *Id.*  On January 6, 2014, defendants renewed their motion to dismiss.  *Id.*

On January 31, 2014, Judge Francis ordered Hardee to complete, sign, and return to defendants' counsel the requested unsealing release by February 21, 2014, and cautioned that failing to do so would result in the dismissal of his Complaint without need for further action by

---

[3] For reasons that are not clear, this letter was never docketed on ECF.  Defendants are directed to locate this letter and ensure that it is docketed.

defendants.  Dkt. 36.  On February 19, 2014, Hardee provided defendants with the unsealing release.  Dkt. 37.

On March 10, 2014, defendants sought a fourth extension of the discovery deadline, to March 31, 2014, and asked the court to warn Hardee that, if he failed to respond to defendants' requests for admissions by that date, they would be deemed admitted.  *Id.*  On March 11, 2014, Judge Francis granted the extension.  Dkt. 38.  All told, fact discovery in this case lasted for 11 months.

On April 30, 2014, one month after the close of fact discovery, defendants filed the present motion for partial summary judgment, Dkt. 39, and supporting memorandum of law, Dkt. 43 ("Def. Br.").  On May 5, 2014, Judge Francis ordered Hardee to respond to defendants' motion by May 30, 2014.  Dkt. 44.  On May 12, 2014, Hardee submitted a letter stating that the issues involved in this case were too complex for him to present adequately; accordingly, he requested assistance in obtaining counsel.  Dkt. 46.  On May 15, 2014, Judge Francis denied Hardee's request for appointed counse, but granted him an extension of time, to June 13, 2014, to oppose defendants' motion for partial summary judgment.  Dkt. 45.  As of this date, Hardee has not submitted an opposition brief.

On June 30, 2014, defendants requested that their motion for partial summary judgment be deemed fully briefed.  Dkt. 48.

## II.     Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  *See Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d

Cir. 2004). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).

The burden remains the same where the motion for summary judgment is unopposed. *See Vt. Teddy Bear*, 373 F.3d at 244 ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied even if no opposing evidentiary matter is presented.'") (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. The court must be satisfied that the citation to evidence in the record supports the assertion." *Id.* In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

Where, as here, a party is proceeding *pro se*, this Court has an obligation to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, a party's "bald assertion, completely unsupported by evidence," is insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

**III.     Discussion**

Before the Court are three motions for summary judgment:  First, Cosaluzzo moves for summary judgment as to Hardee's excessive force claim on the grounds that Cosaluzzo was not present for, and did not participate in, Hardee's arrest.  Second, the City moves for summary judgment as to Hardee's excessive force claim on the grounds that Hardee has provided no evidence that the alleged constitutional violation was caused by an officially-adopted municipal policy or custom, as required by *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).  Third, defendants move for summary judgment as to Hardee's assault and battery claim on the grounds that Hardee failed to comply with New York State's notice-of-claim requirement.  The Court addresses each motion in turn.

**A.     The Excessive Force Claim Against Cosaluzzo**

Defendants' first motion concerns Hardee's excessive force claim against Cosaluzzo.  That claim, brought pursuant to 42 U.S.C. § 1983, pertains solely to events that allegedly occurred when Siani, Loud, and Kailer arrested Hardee.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffit v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see also Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011); *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).  Here, it is undisputed that Cosaluzzo was not present at, and did not participate in, Hardee's arrest.  *See* Def. 56.1 ¶¶ 35–38.  Cosaluzzo was therefore not personally involved in the alleged deprivation of Hardee's constitutional rights.  Accordingly, Cosaluzzo is entitled to summary judgment on Hardee's claim of excessive force.

11

### B.     The *Monell* Claim Against the City

Defendants' second motion concerns Hardee's § 1983 claim against the City.

To state a § 1983 claim against a municipality, a plaintiff must allege that an officially adopted policy or custom caused his injury.  *See Monell*, 436 U.S. at 694; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights").  In general, a single incident is "not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *cert. denied*, 520 U.S. 1117 (1997) (municipal liability cannot be "predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy").  The fact that Hardee is proceeding *pro se* does not relieve him of the obligation to plead and prove the elements of his *Monell* claim.  *See Costello*, 632 F.3d at 49 (affirming dismissal of *pro se* plaintiff's *Monell* claim where "the complaint does not allege facts sufficient to show that . . . 'the violation of his constitutional rights resulted from a municipal custom or policy'") (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

Here, Hardee has failed to offer any evidence that a municipal policy or custom caused the alleged constitutional violation.  Hardee had 11 months to "adduce evidence that his constitutional rights were violated as a result of either action taken pursuant to an official municipal policy, or deliberate indifference to the possibility of such a violation."  *Brown v. New York City Dep't of Corr.*, No. 08 Civ. 6526 (DC), 2010 WL 2813637, at *3 (S.D.N.Y. July 19,

2010).  He has failed to provide any evidence that would permit a trier of fact to so find, other than by engaging in improper speculation.  Moreover, Hardee offers no evidence to show that the allegedly excessive force used by the officers during his arrest was more than an isolated incident.  A single incident "can be sufficient to establish the existence of a municipal policy, but only if it is accomplished by a city official with final policymaking authority." *Lewis v. City of N.Y.*, No. 07 Civ. 7258 (CM), 2010 WL 2836112, at *6 (S.D.N.Y. June 29, 2010) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  Here, none of the officers whom Hardee accuses of using excessive force is a city official with any final policymaking authority.

Because the record is devoid of evidence that a municipal policy or practice authorized or condoned the police officers' alleged actions, or that the City was deliberately indifferent to the alleged constitutional violation, the Court grants the City summary judgment on Hardee's claim of excessive force.

### C. State Law Claims

Defendants' third motion concerns Hardee's assault and battery claim.  Defendants assert that this state-law claim must be dismissed because Hardee failed to comply with New York's notice-of-claim requirement.

Under Section 50-k(6) of the New York General Municipal Law, "[n]o action or proceeding instituted hereunder . . . shall be prosecuted or maintained against the city . . . or an employee unless notice of claim shall have been made and served upon the city in compliance with [§ 50-e] of this chapter and within ninety days after the claim arises."  N.Y. Gen. Mun. L. § 50-k(6).  This requirement applies to state tort claims brought under this Court's pendant jurisdiction.  *See Hardy v. N.Y. City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).  "Failure to comply with [this requirement] ordinarily requires a dismissal for failure to state a

cause of action." *Id.* (internal citations omitted).  This Court lacks jurisdiction to grant plaintiff leave to file a late notice of claim.  *See* N.Y. Gen. Mun. Law § 50(e)(7) ("All applications under this section [to extend time for a notice of claim] shall be made to the supreme court or to the county court.").

It is undisputed that Hardee did not make or serve a notice of claim.  "Under New York law, a notice of claim is a 'condition precedent' to commencing a tort action against a municipality . . . and must be served within ninety days of when the claim accrued."  *Sheikh v. City of N.Y., Police Dep't*, No. 03 Civ. 6326 (NGG), 2008 WL 5146645, at *13 (E.D.N.Y. Dec. 5, 2008) (citations omitted).  Accordingly, to the extent that Hardee's Complaint can be read to assert an assault and battery claim against the City, that claim is dismissed.

As to the assault and battery claim asserted against Saini, Loud, and Kailer,[4] however, "a notice of claim is not required when the claim alleges injuries resulting from intentional wrongdoing or recklessness, misconduct for which the City has no obligation to indemnify an employee." *Id.* (citations omitted); *see also Brenner v. Heavener*, 492 F. Supp. 2d 399, 405 (S.D.N.Y. 2007) ("The notice prerequisite does not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing or recklessness—misconduct for which the City has no obligation to indemnify."); *Hemrie v. City of N.Y.*, No. 96 Civ. 213 (DLC), 2000 WL 1234594, at *3 (S.D.N.Y. Aug. 31, 2000) (the notice-of-claim requirement under § 50-k(6) is "best understood to apply only to claims against a City employee for which the employee has a right to indemnification"); *Jean-*

---

[4] Hardee also asserts an assault and battery claim against Cosaluzzo.  However, as discussed *supra* Part III.A, it is undisputed that Cosaluzzo did not take part in Hardee's arrest.  Because Hardee's assault and battery claim stems from acts allegedly committed during his arrest, that claim is dismissed as to Cosaluzzo.

*Laurent v. Hennessy*, No. 05 Civ. 1155 (JFB) (LB), 2008 WL 3049875, at *18 (E.D.N.Y. Aug. 1, 2008) (a plaintiff need not submit a notice of claim for claims that arise from "actions outside of the scope of [defendants'] employment," for which the City "is not required to indemnify defendants").  The City is required to indemnify a municipal employee only if his liability arose from conduct "within the scope of his employment and in the discharge of his duties," as long as the employee was "not in violation of any rule or regulation of his agency at the time the alleged damages were sustained" and the injury was not caused by "from intentional wrongdoing or recklessness on the part of the employee."  N.Y. Gen. Mun. Law § 50-k(3).

      Here, if the trier of fact finds Saini, Loud, and Kailer liable for assault and battery, that verdict would necessarily encompass a finding that these defendants engaged in conduct that either violated a rule or regulation of the New York City Police Department or constituted intentional wrongdoing.  *See Zgraggen v. Wilsey*, 606 N.Y.S.2d 444, 445 (3d Dep't 1994) ("The elements of a cause of action for battery are bodily contact, made with intent, and offensive in nature.").  Because the City would not, in that case, be required to indemnify these officers, Hardee was not, under New York law, required to file a notice of claim before filing an assault and battery lawsuit against Saini, Loud, and Kailer.  *See Brenner*, 492 F. Supp. 2d at 405.  Accordingly, the individual defendants' motion for summary judgment as to Hardee's assault and battery claim is denied.

## CONCLUSION

      For the foregoing reasons, the motion for partial summary judgment is granted in part and denied in part.  As to all claims asserted against Cosaluzzo and the City, summary judgment is granted in favor of Cosaluzzo and the City.  However, summary judgment is denied as to Hardee's assault and battery claim against Saini, Loud, and Kailer.  The Clerk of Court is

directed to remove defendants Cosaluzzo and the City from the caption of this case and to terminate the motion pending at docket number 39.

By August 18, 2014, defendants are directed to serve this Opinion & Order on Hardee by certified mail. Two claims now remain in the case, both asserted against defendants Saini, Loud, and Kailer: (1) a § 1983 claim of excessive force, in violation of the Fourth Amendment to the U.S. Constitution; and (2) a New York State law claim of assault and battery. Defendants are directed to confer with Hardee by August 29, 2014, and to submit, by September 2, 2014, a letter to the Court, setting forth the parties' respective views regarding appropriate next steps in this litigation.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 14, 2014
       New York, New York